## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MERRITT ISLAND WOODWERX
LLC, and TRUE TOUCH SERVICES
LLC, individually and on behalf of all
others similarly situated,

               Plaintiffs,

v.

SPACE COAST CREDIT UNION,

               Defendant.

Case No. 6:23-CV-01066-PGB-DCI

## DEFENDANT SPACE COAST CREDIT UNION'S
## MOTION TO COMPEL ARBITRATION

Defendant Space Coast Credit Union ("Space Coast") respectfully submits this motion and supporting memorandum of law to dismiss or, alternatively, stay proceedings and compel arbitration of Plaintiffs' claims pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA").[1]

## I.    INTRODUCTION

This is a straightforward motion to compel arbitration. Plaintiffs are a current and a former member of Space Coast. In their Amended Complaint, Plaintiffs' allege that Space Coast breached its Membership Agreement by

---

[1] Space Coast concurrently filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Space Coast submits that the Court should rule on this motion first as it may obviate the need to address the Motion to Dismiss.

assessing certain overdraft fees on their business checking accounts. The Membership Agreement that Space Coast supposedly breached contains an Arbitration Agreement. By opening and maintaining their accounts with Space Coast, Plaintiffs both agreed to arbitrate "any and all disputes arising out of, affecting, or relating to" their accounts or relationship with Space Coast.

In an effort to avoid their contractual obligations, Plaintiffs allege (and will no doubt argue) that Space Coast refused to participate in another arbitration and that somehow forced them to bring this action. That argument, if made, should be rejected for the following reasons. First, neither Plaintiff has filed an arbitration demand. Rather, before filing the original Complaint in this case, the sole member of Plaintiff Merritt Island Woodwerx LLC filed an arbitration demand in his individual and personal capacity with the American Arbitration Association ("AAA") relating to his personal checking account. AAA improperly declined to administer the arbitration demand because Space Coast's Arbitration Agreement was not yet registered with AAA. Space Coast corrected the issue and the Arbitration Agreement is now registered with the AAA. But even assuming that Plaintiffs were prevented from initiating arbitration at AAA (and they were not), the Arbitration Agreement requires arbitration at another forum to be selected by Plaintiffs. Despite the plain language of the Arbitration Agreement, Plaintiffs made no attempt to arbitrate and instead ran straight to court. Space Coast notified

Plaintiffs that their claims can and must be resolved through individual arbitration but they have refused to do so.

There is no question that Plaintiffs agreed to arbitrate all claims against Space Coast and that the claims here fall squarely within the scope of the Arbitration Agreement. Accordingly, the Court should dismiss the Amended Complaint or, alternatively, stay proceedings and compel Plaintiffs to arbitrate their claims on an individual basis.

## II.    BACKGROUND

### A.    The Parties

Space Coast is a member-owned, not-for-profit credit union headquartered in Melbourne, Florida. Space Coast offers its members retail banking services, including checking accounts. (Am. Compl. ¶ 8.) Plaintiffs Merritt Island Woodwerx LLC ("Island Woodwerx") and True Touch Services LLC ("True Touch") are members of Space Coast who had or now have checking accounts at Space Coast. (*Id*. ¶¶ 6-7.)

On or about July 2, 2019, Plaintiff Island Woodwerx opened a checking account with Space Coast by signing a Business Services Account Agreement. (Declaration of Erin Freeman ("Freeman Decl."), ¶ 5.) Island Woodwerx's sole member is Joshua Brotherton. (Am. Compl. ¶ 6.) Island Woodwerx currently maintains its checking account with Space Coast. (Freeman Decl., ¶ 7.)

On or about October 14, 2021, Plaintiff True Touch opened a checking account with Space Coast by signing a Business Services Account Agreement. (*Id.* ¶ 9.) True Touch's checking account was closed and charged-off as of April 2023. (*Id.* ¶ 11.)

### B.    The Parties' Arbitration Agreement

#### 1.    *Island Woodwerx Agreed to Arbitrate*

When Island Woodwerx opened its account, it acknowledged receipt of and agreed to the terms of Space Coast's then-current Membership Agreement. (Freeman Decl., ¶ 5; *id.*, Ex. B.) Accordingly, Island Woodwerx agreed that the Membership Agreement "may be amended by [Space Coast] at any time, in which case [Space Coast] will provide . . . a notice of amendment as required by law or regulation." (*Id.*, Ex. B at 2.) Pursuant to the foregoing provision, Space Coast amended the Membership Agreement in January 2020 to implement an arbitration and class action waiver provision (the "Arbitration Agreement"). (*Id.* ¶ 15.)

Space Coast provided members the Arbitration Agreement through a change in terms notice (the "CIT Notice"). (*Id.*) The CIT Notice was sent to members at the same time as December 2019 account statements, and was delivered in the same manner that members elected to receive their statements and notices. (*Id.* ¶¶ 15-16.) In January 2020, Members who elected to receive electronic statements and notices, like Island Woodwerx, received an email from Space Coast

informing them to login to online banking to review their statement on Space Coast's e-statement portal. (*Id.* ¶¶ 6, 16.) Space Coast placed the following bell notification icon next to the "Change in Terms" section on the e-statements portal to alert members that a change in terms documents was available for review:



(*Id.* ¶ 16; *see id.*, Ex. F.)

The CIT Notice was uploaded and available for download under the "Change in Terms" tab—it said, in part:

**Change in Terms Notice**
**Agreements and Disclosures**
**Effective February 1, 2020**

This notice is to inform you that Space Coast Credit Union has revised its Agreements and Disclosures, effective February 1, 2020. For our full Agreements and Disclosures, please visit https://sccu.com/SCCU/media/documents/Disclosures_SCCU-Agreements-Disclosures.pdf.

. . .

The following section has been added:

### ARBITRATION AND WAIVER OF CLASS ACTION

. . .

(*Id.*, Ex. E.) After providing the full text of the Arbitration Agreement, the CIT Notice explained how members, like Island Woodwerx, could opt-out of the Arbitration Agreement before it became effective. It said:

> **Right to Opt-Out.** You have the right to opt-out of this Arbitration Agreement and it will not affect any other terms and conditions of Your Account Agreement or Your relationship with the Credit Union. To opt-out, You must notify the Credit Union in writing of Your intent to do so within 30 days after the Effective Date. Your opt-out will not be effective and You will be deemed to have consented and agreed to the Arbitration Agreement unless Your notice of intent to opt-out is received by the Credit Union in writing at Space Coast Credit Union, Attn: Legal, P.O. Box 419001, Melbourne, FL 32941-9001 within such 30 day time period. Your notice of intent to opt-out can be a letter that is signed by You or an email sent by You to Us at legal@sccu.com that states "I elect to opt-out of the Arbitration Agreement" or any words to that effect.

(*Id.*)

Months later, in August 2020, Space Coast sent an updated version of the Membership Agreement in its entirety to all members. (*Id.* ¶ 17.) For members who received electronic notices and statements, like Island Woodwerx, Space Coast sent an email with the subject line reading: "SCCU Change in Terms Notice." (*Id.*

6

¶ 18; *id.*, Ex. G.) The body of the email sent in August 2020 included specific instructions for members to review the updated Membership Agreement through the online e-statements portal. (*Id.*) The updated Membership Agreement sent in August 2020 included the same Arbitration Agreement added in January 2020, and provided members a second opportunity to opt-out within 30 days. (*Id.*, Ex. H at § 37.)

111 Space Coast members, including those who received electronic statements, chose to opt-out of the Arbitration Agreement after receiving the CIT Notice in January 2020. (*Id.* ¶ 20.) Two additional Space Coast members chose to opt-out of the Arbitration Agreement after receiving the updated Membership Agreement in August 2020. (*Id* ¶ 21.) Island Woodwerx did not opt-out at either time and continues to use its account. (*Id.* ¶¶ 20-21.)

### 2.    *True Touch Agreed to Arbitrate*

When True Touch opened its account, it acknowledged receipt of and agreed to the terms of Space Coast's current Membership Agreement, which at that time included the Arbitration Agreement. (Freeman Decl. ¶ 10.)

The Arbitration Agreement states in pertinent:

> **ARBITRATION AND WAIVER OF CLASS ACTION** - You and the Credit Union agree that we shall attempt to informally settle any and all disputes arising out of, affecting, or relating to Your accounts, or the products or services the Credit Union has provided, will provide or has offered to provide to You, and/or any aspect of Your relationship with the Credit Union (hereafter referred to as the "Claims"). If that cannot be done,

then You agree that any and all Claims that are threatened, made, filed or initiated after the Effective Date (defined below) of this Arbitration and Waiver of Class Action provision ("Arbitration Agreement"), even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date, shall, at the election of either You or Us, be resolved by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules"), whether such Claims are in contract, tort, statute, or otherwise. . . . Either You or We may elect to resolve a particular Claim through arbitration, even if one of us has already initiated litigation in court related to the Claim, by: (a) making written demand for arbitration upon the other party, (b) initiating arbitration against the other party, or (c) filing a motion to compel arbitration in court. AS A RESULT, IF EITHER YOU OR WE ELECT TO RESOLVE A PARTICULAR CLAIM THROUGH ARBITRATION, YOU WILL GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS ACCOUNT AGREEMENT (EXCEPT FOR CLAIMS BROUGHT INDIVIDUALLY WITHIN SMALL CLAIMS COURT JURISDICTION, SO LONG AS THE CLAIM REMAINS IN SMALL CLAIMS COURT). This Arbitration Agreement shall be interpreted and enforced in accordance with the Federal Arbitration Act set forth in Title 9 of the U.S. Code to the fullest extent possible, notwithstanding any state law to the contrary, regardless of the origin or nature of the Claims at issue.

. . .

**a. Selection of Arbitrator.** . . . If AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims.

**b. Effective Date.** This Arbitration Agreement is effective upon the 31st day after we provide it to you ("Effective Date"), unless you opt-out in accordance with the requirements of the RIGHT TO OPT-OUT provision below. If you receive your statements by mail, then the Arbitration Agreement was provided to you when it was mailed. If you receive your statements electronically, then it was provided to you when you were sent notice electronically.

**c. Arbitration Proceedings.** . . . Any determination as to whether this Arbitration Agreement is valid or enforceable in part or in its entirety will be made solely by the arbitrator, including without limitation any issues relating to whether a Claim is subject to arbitration; provided, however, the enforceability of the Class Action Waiver set forth below shall be determined by the Court.

**d. Class Action Waiver.** ANY ARBITRATION OF A CLAIM WILL BE ON AN INDIVIDUAL BASIS. YOU UNDERSTAND AND AGREE THAT YOU ARE WAIVING THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN A CLASS ACTION LAWSUIT.

(Am. Compl., Ex. 1 at § 37.)

### C.   Brotherton's Arbitration Demand

On or around March 27, 2023, Mr. Brotherton, Plaintiff Island Woodwerx's sole member, sent Space Coast an arbitration demand alleging that Space Coast breached its Membership Agreement through the improper assessment of overdraft fees. (Declaration of Christopher T. Vazquez ("Vazquez Decl.") ¶ 3.) On or about April 20, 2023, Space Coast received a letter from the AAA stating that the AAA declined to administer Mr. Brotherton's arbitration demand because Space Coast failed to comply with AAA's policies "[p]rior to the filing" of the demand. (Am. Compl., Ex. 3 at 1.) Space Coast then immediately contacted AAA explaining that Space Coast would like to proceed with arbitration and would register the Arbitration Agreement with AAA to cure any non-compliance.[2] (Vazquez Decl. ¶¶ 5-6.)

---

[2] It is not at all uncommon for businesses not to have their arbitration provisions registered with AAA prior to the filing of an arbitration demand. Indeed, AAA Rule 12 provides a procedure for expedited review of an arbitration provision under such circumstances. *See* American Arbitration Association, *Consumer Arbitration Rules*, R. 12 (amended and effective Sept. 1, 2014), adr.org/sites/default/files/Consumer-Rules-Web.pdf ("If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time."). For reasons unknown to Space Coast, that procedure was not followed by AAA in this instance.

On or about July 24, 2023, Space Coast received a second letter from the AAA informing Space Coast that the Arbitration Agreement was approved and that "the AAA is prepared to administer consumer-related disputes filed pursuant to" the Arbitration Agreement. (*Id.* ¶ 8.) Space Coast notified Plaintiffs that the AAA would now administer claims against Space Coast and requested that Plaintiffs withdraw this case pursuant to the parties' agreements. (*Id.* ¶ 9.) Plaintiffs refused. (*Id.*)

### D.    Plaintiffs' Claims

Plaintiffs' claims for breach of contract are based on Space Coast's assessment of certain overdraft fees. (Am. Compl. ¶ 1.) Plaintiffs first allege that Space Coast breached the Membership Agreement by charging overdraft fees on debit card payment transactions that were authorized with a sufficient account balance, but later were paid when they had insufficient balance—so-called "Authorized Positive, Purportedly Settled Negative" or "APPSN" transactions. (*Id.* ¶¶ 17, 36, 73.) Next, Plaintiffs claim that Space Coast charges improper overdraft fees on third-party merchant fees that are presented for payment against an insufficient account balance. (*Id.* ¶¶ 1, 77, 87.) Plaintiffs also claim (in the alternative) that Space Coast has been unjustly enriched by the assessment of the aforementioned fees. (*Id.* ¶ 130.)

## III.   LEGAL STANDARD

Under § 2 of the FAA, any arbitration provision in a written "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act evidences "a strong federal policy in favor of arbitration." *Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "The [FAA] leaves no place for the exercise of discretion by a district court . . . [which] *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

## IV.   ARGUMENT

### A.   Plaintiffs' Claims Must Be Arbitrated

Under the FAA, a court must "either stay or dismiss a lawsuit and . . . compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). "[A]s with any other contract, the parties' intentions control. . . ." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).

### 1.    *The Parties Agreed to Mandatory Arbitration*

In Florida, like most states, a contract is made "when there is offer, acceptance, and consideration." *Lowe v. Charter Commc'n Holdings LLC*, 2019 WL 13248799, at *2 (M.D. Fla. Nov. 5, 2019). A valid arbitration agreement exists "when the parties' assent is manifested through written or spoken words, or inferred in whole or in part from the parties' conduct." *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1221 (M.D. Fla. 2013); *see also H.W. Gay Enterprises, Inc. v. John Hall Elec. Contracting, Inc.*, 792 So. 2d 580, 580 (Fla. 4th DCA 2001) (parties agreed to arbitration provision in written contract "by their words and conduct"). It follows that "a party may manifest assent to an agreement to arbitrate by failing to opt out of the agreement within a specified time." *Grant v. Morgan Stanley Smith Barney LLC*, 2017 WL 1044484, at *3 (S.D. Fla. Mar. 20, 2017) (quotation marks omitted). To resist enforcement of an arbitration provision, a party must "substantiate the denial of the contract with enough evidence to make the denial colorable." *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008) (quotation marks and alterations omitted).

Here, the evidence shows that Plaintiffs agreed to be bound by the Arbitration Agreement. True Touch signed a Business Services Account Agreement acknowledging receipt of an agreement with the Arbitration Agreement when it opened its checking account in October 2021. (Freeman Decl.,

Ex. D at 1 ("You acknowledge receipt of and agree to be bound by the appropriate and required disclosures and schedule of fees.").) Thus, by opening and maintaining its account at Space Coast, True Touch agreed to the terms of the Membership Agreement and Arbitration Agreement.

Island Woodwerx is likewise bound by the Arbitration Agreement because it was given ample notice of the Arbitration Agreement and did not exercise its right to opt-out. By opening and maintaining its account, Island Woodwerx agreed that the Membership Agreement "may be amended by [Space Coast] at any time[.]" (*Id.*, Ex. B at 2.) In January 2020, Space Coast did just that and amended the Membership Agreement to implement the Arbitration Agreement. As it had in the past, Space Coast sent Island Woodwerx an email indicating that its monthly account statement was ready for review through the e-statement portal.[3] (*Id.* ¶ 16.) On the e-statements portal, Space Coast included an alert icon to show Island Woodwerx that a new change in terms document (the CIT Notice) was uploaded. (*Id.*) The CIT Notice itself said that the Arbitration Agreement was being added to the Membership Agreement, effective February 1, 2020, and, importantly, provided instructions for Island Woodwerx to opt-out. (*Id.*, Ex. E.) Island Woodwerx did not opt-out. (*Id.* ¶ 20.) Then again, in August 2020, Space Coast

---

[3] Island Woodwerx was required to update its email address on file with Space Coast. (*See* Am. Compl., Ex. 1 at § 22 ("You are responsible for notifying us of any name or address change.").

sent Island Woodwerx another email indicating that Space Coast was providing an updated Membership Agreement in its entirety for review online. (*Id.* ¶ 18; *see id.*, Ex. G.) Space Coast continued to honor, and indeed received, opt-outs after sending notice of the updated Membership Agreement in August 2020. (*Id.* ¶ 21.) Again, Island Woodwerx did not opt out.[4] (*Id.*)

Because Plaintiffs were on reasonable notice of the Arbitration Provision, did not opt-out, and manifest assent through continued use of their accounts, they each agreed to its terms. *See Brea Sarasota, LLC v. Bickel*, 95 So. 3d 1015, 1017 (Fla. 2d DCA 2012) (reversing denial of motion to compel where plaintiff failed to opt-out of arbitration provision); *SCG Harbourwood, LLC v. Hanyan*, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012) (same); *Sanders v. Comcast Cable Holdings, LLC*, No. 3:07CV918J33HTS, 2008 WL 150479, at *6 (M.D. Fla. Jan. 14, 2008) (enforcing arbitration agreement where plaintiff did not opt-out and continued use of defendants' services and payment of cable bills).

### 2. *Space Coast Did Not Refuse Arbitration*

Plaintiffs' allegation that they were forced to bring this case because Space Coast somehow refused to participate in arbitration falls flat. (*See* Am. Compl. ¶¶ 3-4.) As an initial matter, neither Plaintiff has attempted arbitration against

---

[4] For the avoidance of doubt, Island Woodwerx concedes, at a minimum, that it was on inquiry notice of the Arbitration Agreement by virtue of its sole member, Mr. Brotherton, seeking to initiate arbitration pursuant to the Arbitration Agreement.

Space Coast. Rather, Island Woodwerx's sole member, Mr. Brotherton, filed an arbitration demand against Space Coast in his individual and personal capacity for claims relating to his personal account. (Am. Compl. ¶ 3; *see* Vazquez Decl., ¶ 3.) But even assuming that Island Woodwerx attempted arbitration through its sole member, the Arbitration Agreement does not allow Island Woodwerx to evade arbitration altogether if the AAA is not available to administer a demand. Rather, the Arbitration Agreement states: "If AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims." (Am. Compl., Ex. 1 at § 37(a).) Plaintiffs are not entitled to bring their claims in this Court simply because the AAA was unavailable—instead, they are required to select an alternative arbitration forum.

Additionally, Plaintiffs agreed that Space Coast can elect to arbitrate claims even after a complaint is filed. The Arbitration Agreement specifically states:

> Either You or We may elect to resolve a particular Claim through arbitration, even if one of us has already initiated litigation in court related to the Claim, by: (a) making written demand for arbitration upon the other party, (b) initiating arbitration against the other party, or (c) filing a motion to compel arbitration in court.

(Am. Compl., Ex. 1 at § 37.) Since Plaintiffs filed the Amended Complaint, the AAA has indicated that it is prepared to arbitrate claims under the Arbitration Agreement. (Vazquez Decl. ¶ 7.) Space Coast notified Plaintiffs and requested to

proceed with arbitration. (*Id*. ¶ 8.) Rather than spare the party and judicial resources expended through motion practice, Plaintiffs refused arbitration. (*Id*.)

At bottom, there is no basis for Plaintiffs to skirt their agreements to arbitrate claims against Space Coast.

### 3.    *The Arbitration Agreement Applies to Plaintiffs' Claims*

Under the FAA, "parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017). Courts should look to the parties' intent "as manifested in the plain language of the arbitration provision and contract itself [to] determine whether a dispute is subject to arbitration." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). Any "doubts concerning the *scope* of arbitrable issues should be resolved in favor of arbitration." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quotation marks omitted). In other words, the Court must compel arbitration absent "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputed." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted).

The Arbitration Agreement clearly delegates issues of arbitrability to the arbitrator. It says: "Any determination as to whether this Arbitration Agreement is valid or enforceable in part or in its entirety will be made solely by the arbitrator,

including without limitation any issues relating to whether a claim is subject to arbitration[.]" (Am. Compl., Ex. 1 at § 37(c).) This Court need not (and cannot) determine whether Plaintiffs' claims fall within the scope of the Arbitration Agreement. *See Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) ("When an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract *as a whole*, the federal courts may not review his claim because it has been committed to the power of the arbitrator.")

But even assuming Plaintiffs challenge the delegation provision, Plaintiffs' claims fall precisely within the scope of the Arbitration Agreement. The Arbitration Agreement requires arbitration of any "Claims," defined therein as "any and all disputes arising out of, affecting, or relating to Your accounts, or the products or services the Credit Union has provided, will provide or has offered to provide to You, and/or any aspect of Your relationship with the Credit Union[.]" (Am. Compl., Ex. 1 at § 37.) Additionally, the Arbitration Agreement applies "even if the Claims arise out of, affect or relate to conduct that occurred prior to the Effective Date[.]" (*Id.*)

Plaintiffs' breach of contract claims necessarily arise from and relate to the Membership Agreement. Plaintiffs' unjust enrichment claim (pled in the alternative) is simply derivative of Plaintiffs' breach theories and, in any event, arises from the services provided by Space Coast and Plaintiffs' relationship with

17

Space Coast. Accordingly, all of Plaintiffs' claims are subject to the Arbitration Agreement.

### B.    Plaintiffs' Claims Must Be Arbitrated Individually

Last, Plaintiffs agreed to arbitrate their claims individually and waived any right to participate in a class action. Under the FAA, class action waiver provisions are enforceable and any contrary Florida public policy is preempted. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621-22 (2018) (enforcing class action waiver); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011) (FAA preempts state law invalidating class action waivers in arbitration agreements); *McKenzie Check Advance of Fla., LLC v. Betts*, 112 So. 3d 1176, 1184-1185 (Fla. 2013) (holding that the FAA preempts any Florida law that would invalidate class action waiver); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1234 (11th Cir. 2012) (same).

Here, the Arbitration Agreement's class action waiver states:

> ANY ARBITRATION OF A CLAIM WILL BE ON AN INDIVIDUAL BASIS. YOU UNDERSTAND AND AGREE THAT YOU ARE WAIVING THE RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN A CLASS ACTION LAWSUIT.

(Am. Compl., Ex. 1 at § 37(d).)

Accordingly, Plaintiffs must arbitrate their claims on an individual basis and not on behalf of any putative class.

## C.    The Amended Complaint Should Be Dismissed

A district court has discretion to dismiss an action "when *all* the issues raised in . . . court must be submitted to arbitration." *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV-JORDAN, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2003) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)) (collecting authority). Here, all of Plaintiffs' claims are subject to mandatory arbitration under the Arbitration Agreement. Accordingly, dismissal is appropriate. Alternatively, if this action is not dismissed, all proceedings should be stayed pending the conclusion of arbitration. *See* 9 U.S.C. § 3 (requiring stay of proceedings); *see also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (under the FAA, state law claims should be stayed pending arbitration).

## V.    CONCLUSION

For the foregoing reasons, this Court should grant Space Coast's Motion and compel individual arbitration of Plaintiffs' claims. This case should be dismissed or, alternatively, stayed pending the outcome of arbitration.

*        *        *

**<u>Local Rule 3.01(g) Certification</u>**: Counsel for Space Coast, Stuart M. Richter, certifies that on August 9, 2023, he conferred by email with Plaintiffs' counsel,

19

Lynn A. Toops, regarding this motion, and that Plaintiffs object to the relief requested.

Respectfully submitted,

Dated: August 14, 2023

/s/ Thomas F. Neal

Stuart M. Richter (*pro hac vice filed*)
**KATTEN MUCHIN ROSENMAN LLP**
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Tel: (310) 788-4400
Fax: (310) 788-4471
stuart.richter@katten.com

Eric T. Werlinger (*pro hac vice forthcoming*)
**KATTEN MUCHIN ROSENMAN LLP**
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006-3404
Tel: (202) 625-3553
Fax: (202) 298-7570
eric.werlinger@katten.com

Christopher Vazquez (*pro hac vice forthcoming*)
**KATTEN MUCHIN ROSENMAN LLP**
50 Rockefeller Plaza
New York, New York 10020-1605
Tel: (212) 940-8800
christopher.vazquez@katten.com

Thomas F. Neal
Florida Bar No. 603368
**DEBEAUBIEN, SIMMONS, KNIGHT, MANTZARIS & NEAL, LLP**
332 N. Magnolia Avenue
Orlando, FL 32801
(407) 422-2454
tneal@dsklawgroup.com
lnovak@dsklawgroup.com

*Attorneys for Defendant Space Coast Credit Union*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on August 14, 2023. I also certify that the foregoing document is being served this day via transmission of Electronic Filing generated by CM/ECF on the following counsel:

Christopher Duran Jennings, Esq.
Johnson Firm
610 President Clinton Avenue, Suite 300
Little Rock, AR 72201
chris@yourattorney.com
*Pro Hac Vice*

James Gerard Stranch IV, Esq.
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Ste 200
Nashville, TN 37203
gstranch@stranchlaw.com
*Pro Hac Vice*

Lisa M. La Fornara, Esq.
Cohen & Malad, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
llafornara@cohenandmalad.com
*Pro Hac Vice*

Jacob Lawrence Phillips, Esq.
Normand Law PLLC
P.O. Box 140036
Orlando, FL 32814
407-603-6031
jacob.phillips@normandpllc.com

*Attorneys for Plaintiffs*

*/s/ Thomas F. Neal*
Attorney

21