**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MERRITT ISLAND**
**WOODWERX LLC and TRUE**
**TOUCH SERVICES LLC,**

        **Plaintiffs,**

**v.**                        **Case No: 6:23-cv-1066-PGB-DCI**

**SPACE COAST CREDIT UNION,**

        **Defendant.**
_____/

## ORDER

This cause is before the Court on Defendant Space Coast Credit Union's ("**Space Coast**") Motion to Compel Arbitration (Doc. 24) and Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 23). Plaintiffs Merritt Island Woodwerx LLC ("**Woodwerx**") and True Touch Services LLC ("**True Touch**") (collectively, "**Plaintiffs**") timely responded in opposition. (Docs. 37, 39). With leave, Space Coast filed sur-replies. (Docs. 46, 47). Upon consideration, Space Coast's Motions will be denied.

## I.   BACKGROUND

Plaintiff limited-liability companies seek the proper forum to litigate their breach of contract claims against Space Coast related to overdraft fees. (Doc. 8, ¶¶ 1–4). When opening checking accounts with Space Coast, Plaintiffs assented to a Member Services Agreement ("**MSA**"), which dictates their relationship with the

credit union. (*Id.* ¶ 34; Doc. 8-1, §§ 13, 37). Under the MSA, Space Coast allegedly processes debit card transactions as follows:

> **Signature-Based Debit Card Purchase Transactions.** These are purchase transactions using your debit card that are processed through a signature-based network. Rather than entering a PIN, you typically sign for the purchase; however, merchants may not require your signature for certain transactions. Merchants may seek authorization for [debit card] transactions. The authorization request places a hold on funds in your account when the authorization is completed. The "authorization hold" will reduce your available balance by the amount authorized but will not affect your actual balance. The transaction is subsequently processed by the merchant and submitted to us for payment. This can happen hours or sometimes days after the transaction, depending on the merchant and its payment processor.
>
> . . .
>
> **Understanding Your Account Balance.** Your checking account has two kinds of balances: the actual balance and the available balance. Your actual balance reflects the full amount of all deposits to your account as well as payment transactions that have been posted to your account. It does not reflect checks you have written and are still outstanding or transactions that have been authorized but are still pending. Your available balance is the amount of money in your account that is available for you to use. Your available balance is your actual balance less: (1) holds placed on deposits; (2) holds on debit card or other transactions that have been authorized but are not yet posted; and (3) any other holds, such as holds related to pledges of account funds and minimum balance requirements or to comply with court orders. We use your available balance to determine whether there are sufficient funds in your account to pay items, including checks and drafts, as well as ACH, debit card and other electronic transactions. Pending transactions and holds placed on your account may reduce your available balance and may cause your account to become overdrawn regardless of your actual balance. In such cases, subsequent posting of the pending transactions may further overdraw your account and be subject to additional fees. You should assume that any item which would overdraw your account based on your available balance may create an overdraft.

(Doc. 8-1, §§ 13(c)–(d)). Under these procedures, Plaintiffs contend a transaction that does not overdraw the account at the time it is authorized cannot later overdraw the account when the transaction settles, nor can a merchant's attempt to collect a fee. (Doc. 8, ¶¶ 29–56).

This case is premised on Space Coast's alleged practice of collecting overdraft fees on transactions (1) that did not overdraw an account at the time they were authorized, but purportedly did overdraw the account when they later settled, known as "Authorize Positive, Settle Negative" or "APSN" transactions, or (2) where another fee (not a transaction) overdrew the account. (*Id.* ¶¶ 29–56, 77–85). The MSA's overdraft fee provision provides:

> If, on any day, the available balance in your share or deposit account is not sufficient to pay the full amount of a check, draft, transaction, or other item, plus any applicable fee, that is posted to your account, we may return the item or pay it, as described below. The Credit Union's determination of an insufficient available account balance may be made at any time between presentation and the Credit Union's midnight deadline with only one review of the account required. We do not have to notify you if your account does not have a sufficient available balance in order to pay an item. Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item . . . Without your consent, the Credit Union may not authorize and pay an ATM or one-time debit card transaction that will result in insufficient funds in your account.

(Doc. 8-1, § 13(a)). Beginning in 2019, Space Coast intentionally charged overdraft fees to Plaintiffs' accounts on numerous occasions. (Doc. 8, ¶¶ 71–72). Plaintiffs allege to have had sufficient funds in their account at the time. (*Id.* ¶¶ 73–76).

Displeased with the fees, Plaintiffs sought out legal remedies to get their money back. For resolving disputes, the MSA contains a mandatory arbitration clause ("**Arbitration Agreement**"), which reads, in relevant part, as follows:

> **ARBITRATION AND WAIVER OF CLASS ACTION** – []
> You agree that any and all Claims that are threatened, made, filed or initiated after the Effective Date (defined below) of this Arbitration and Waiver of Class Action provision ("Arbitration Agreement") . . . shall, at the election of either You or Us, be resolved by binding arbitration *administered by the American Arbitration Association ("AAA") in accordance with its applicable rules and procedures for consumer disputes ("Rules")*, whether such Claims are in contract, tort, statute, or otherwise. The Rules can be obtained on the AAA website free of charge at www.adr.org; or, a copy of the Rules can be obtained at any Credit Union branch upon request. Either You or We may elect to resolve a particular Claim through arbitration, even if one of us has already initiated litigation in court related to the Claim, by: (a) making written demand for arbitration upon the other party, (b) *initiating arbitration against the other party*, or (c) filing a motion to compel arbitration in court. AS A RESULT, IF EITHER YOU OR WE ELECT TO RESOLVE A PARTICULAR CLAIM THROUGH ARBITRATION, YOU WILL GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS ACCOUNT AGREEMENT . . . This Arbitration Agreement shall be interpreted and enforced in accordance with the Federal Arbitration Act . . .
>
> a. **Selection of Arbitrator**. The Claims shall be resolved by a single arbitrator. The arbitrator shall be selected in accordance with the Rules, and must have experience in the types of financial transactions at issue in the Claims. In the event of a conflict between the Rules and this Arbitration Agreement, this Arbitration Agreement shall supersede the conflicting Rules only to the extent of the inconsistency. If AAA is unavailable to resolve the Claims, and if you and we do not agree on a substitute forum, then you can select the forum for the resolution of the Claims. . . .
>
> c. **Arbitration Proceedings**. The arbitration shall be conducted within 50 miles of your residence at the time the arbitration is commenced. . . . Any determination as to whether this Arbitration Agreement is valid or enforceable in part or in its entirety will be made solely by the arbitrator,

including without limitation any issues relating to whether a
Claim is subject to arbitration[.]

(Doc. 25-8, ¶ 37) (emphasis added). Since 2014, businesses intending the AAA to administer consumer arbitrations must notify the organization and submit their dispute resolution provisions for an administrative compliance review beforehand (and pay a fee). *See* RULE 12, AMERICAN ARBITRATION ASSOCIATION CONSUMER ARBITRATION RULES (Jan. 2016), https://adr.org/sites/default/files/Consumer%20Rules.pdf. Following submittal, should the AAA find the provision substantially complies with its due process safeguards, the organization may agree to administer arbitrations filed pursuant to the clause and include the provision in its publicly available database. *Id.*

On March 27, 2023, Woodwerx filed an arbitration demand with the AAA alleging Space Coast improperly levied overdraft fees. (Doc. 8, ¶ 3; Doc. 26, ¶ 3). The AAA responded by letter on April 20 declining "to administer this claim and any other claims between Space Coast Credit Union and its consumers at this time" because Space Coast had not submitted its consumer dispute resolution plan for review or paid the associated fee. (Doc. 8-3). As noted in the letter, Consumer Rule 1(d) provides "either party may choose to submit its dispute to the appropriate court for resolution, should the AAA decline to administer an arbitration." (*Id.*).

On June 7, Plaintiffs filed a Class Action Complaint against Space Coast in federal court alleging breach of contract for charging impermissible overdraft fees. (Doc. 1). Plaintiffs submitted an Amended Complaint a few days later. (Doc. 8). They specifically allege two breach of contract counts (Counts I & II) relating to

collection of the overdraft fees by improper methods, and alternatively allege unjust enrichment if the MSA is unenforceable (Count III). (Doc. 8, ¶¶ 102–35). Unlike Woodwerx, True Touch did not file an arbitration demand prior to initiating the class action.

On June 9, Space Coast filed its Arbitration Agreement with the AAA for review and paid the fee. (Doc. 26, ¶ 6). On July 24, the AAA approved Space Coast's provision and said based on the administrative review, "it is prepared to administer consumer-related disputes filed pursuant to this clause." (*Id.* ¶ 7). Plaintiffs refused to withdraw the Amended Complaint and return to arbitration. (Doc. 24).

Space Coast moved to compel arbitration or, alternatively, to dismiss the Complaint entirely for failure to state claim. (Docs. 23, 24; Doc. 26, ¶ 8). It contends that its initial failure to comply with AAA Consumer Rule 12 does not matter or if it does, the MSA permits Space Coast to charge the overdraft fees it did. (Doc. 24). Plaintiffs replied that Space Coast is precluded from compelling arbitration under the terms of the Arbitration Agreement, which it breached and waived, and the MSA prevents the credit union from charging the alleged overdraft fees. (Doc. 37, 39). Space Coast argued in its sur-replies that it neither breached nor waived any of its contractual rights because it eventually came into compliance with the AAA Consumer Rules. (Docs. 46, 47). The matter is ripe.

## II.   STANDARD OF REVIEW

### A.   Arbitration

Arbitration agreements are a matter of contract that courts must rigorously enforce according to their terms as they would any other contract, "including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (cleaned up). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, defines what agreements can properly be arbitrated and provides the specific mechanisms dictating their enforcement. *Id.* Courts cannot compel arbitration absent statutory authority under the FAA to do so. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019). Generally, interpreting an arbitration agreement requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995).

A motion to compel arbitration is generally treated as a factual attack on subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) because it relies on an external document impacting a court's ability to hear the case. *Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1222 (M.D. Fla. 2013). With a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations" and the trial court reviews evidence beyond the complaint. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).

### B.      Federal Rule of Civil Procedure 12(b)(6)

A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the factual allegations in the complaint as true and must then determine whether the allegations "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Evaluation of a complaint requires a two-step inquiry: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Additionally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the pleading standard set forth in Rule 8 does not require in-depth factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 570). Dismissal of an action is appropriate "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## III.  DISCUSSION

### A.    Motion to Compel Arbitration

When considering a motion to compel, a district court engages in a two-step inquiry. First, it must determine whether the parties agreed to arbitrate the claims at issue and the terms of that agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626–28 (1985). Second, it must evaluate "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* Both parties agree that a valid Arbitration Agreement includes Plaintiffs' claims within its scope. (Doc. 8, ¶¶ 3–4; Doc. 24, p. 3). But as explained below, Plaintiffs abided by the Agreement's terms and Space Coast did not, so the FAA denies the Court of authority to compel arbitration. *Bedgood v. Wyndham Vacation Resorts, Inc.*, 595 F. Supp. 3d 1195, 1200 (M.D. Fla. 2022). Additionally, Space Coast waived its right to arbitrate. *See Raymond James Fin. Services, Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005).

"The [FAA] provides *two parallel devices* for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, [] § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (emphasis added). Courts may stay a case pending arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. And only "[a] party *aggrieved by the alleged failure, neglect, or refusal of another* to arbitrate under a written agreement" may seek an order compelling arbitration. 9 U.S.C. § 4

(emphasis added). In other words, there must be some "failure to comply" with the terms of the Arbitration Agreement in order to compel it. *Id.* Accordingly, a party to an arbitration agreement may not compel arbitration under § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3. *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018) (citing *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003)).

In this case, the Arbitration Agreement unmistakably incorporates the AAA Consumer Rules. (Doc. 25-8, ¶ 37) (providing disputes shall be "administered by the [AAA] *in accordance with its applicable rules and procedures for consumer disputes*"). Under Consumer Rule 1(a), "[w]hen parties have provided for the AAA's rules . . . as part of their consumer agreement," as Plaintiffs and Space Coast have, "they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement." *Supra* at 9. Time and again, the Eleventh Circuit has affirmed that incorporating any version of the AAA rules into an arbitration agreement makes the chosen rules essential terms enforceable under the contract. *E.g.*, *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233 (11th Cir. 2018). Consumer Rule 1(d) provides that "[s]hould the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." *Supra* at 10. A business can expect the AAA to decline to

administer an arbitration if it has not submitted its arbitration agreement to the organization for review and been approved or paid the annual fee. AAA Consumer Rule 12, *supra* at 17.

Space Coast defaulted on the Arbitration Agreement's terms when it did not comply with the AAA Consumer Rules. (Doc. 8-3). Default is the failure to perform a contractual obligation, regardless of the degree of intentionality. *Default*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("to be neglectful; esp., to fail to perform a contractual obligation"). A default occurs "where the defendant seeking the stay hindered the progress of arbitration." *Miller v. Aaacon Auto Transp., Inc.*, 545 F.2d 1019, 1020 (5th Cir. 1977) (per curiam).[1] So too does it occur when a defendant refuses to pay a necessary arbitration fee. *Hernandez*, 898 F.3d at 1305. Space Coast failed to perform its contractual obligations under AAA Consumer Rule 12 by neglecting to submit the Arbitration Agreement for pre-dispute review and pay the associated fee. (Doc. 8-3). Therefore, the Court may not issue a stay. *See Bedgood*, 595 F. Supp. 3d at 1201.

Plaintiffs also did not fail, neglect, or refuse to initiate arbitration—rather, Space Coast neglected to perform an obligation necessary to arbitrate in its chosen forum. (Doc. 8-3; Doc. 26, ¶¶ 2–6; Doc. 38-2). Under Consumer Rule 1(d), the AAA exercised its power to decline to administer arbitration of any claims between Space Coast and its consumers because the credit union did not comply with the

---

[1] The Eleventh Circuit holds cases handed down by the Fifth Circuit prior to October 1, 1981 shall constitute binding precedent unless overruled en banc. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

Consumer Rule 12 notification requirements. (*See* Doc. 8-3).[2] And after the AAA exercised this power, Plaintiffs were permitted to "submit [their] dispute to [an] appropriate court for resolution." AAA Consumer Rule 12, *supra* at 17. Plaintiffs did so before Space Coast even began to take the steps necessary to comply. (Doc. 1; Doc. 26, ¶ 5). Because Plaintiffs did not fail to comply with the arbitration provision, the Court lacks authority under § 4 to compel arbitration.

Not only does the Court lack the authority to send this case to arbitration under the FAA, the terms of the Arbitration Agreement itself require the action to stay in this forum. In construing an arbitration agreement, "as with any other contract, the parties' intentions control." *Mitsubishi Motors Corp.*, 473 U.S. at 626. The FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19 (2022) (cleaned up). Section 6 of the FAA "is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration." *Id.* The parties clearly intended to incorporate the AAA Consumer Rules into the contract. (Doc. 8-1, § 37). Consumer Rule 12 makes crystal clear that either party may choose to submit the dispute to an appropriate court "[i]f the AAA declines to administer a case due to the business's non-

---

[2] True Touch and any other credit union member could readily determine Space Coast's lack of compliance by looking to the AAA's public database and finding the credit union's provision absent, realizing that submitting an arbitration demand would be futile. *See Bedgood*, 595 F. Supp. 3d at 1202 n.9 ("The Court values substance over formality and does not find it necessary for these select Plaintiffs to go through the same procedures of applying to arbitrate their claims and then being sent back to this Court.").

compliance with this notification requirement." S*upra* at 17. The FAA requires the Court to rigorously enforce those terms—even if that means keeping the claims in court. *See Epic Sys. Corp.*, 138 S. Ct. at 1621.

Yet Space Coast contends Plaintiffs' general promise to arbitrate disputes bars them from bringing their claims in court under any circumstances. Plaintiffs were therefore required to seek out a different arbitral forum or wait to arbitrate until Space Coast came into compliance, the credit union argues, instead of filing their claims in court upon the AAA's refusal. (Doc. 24, pp. 2–3, 14–15; Doc. 46, pp. 2–5). The credit union does not rely on the AAA Consumer Rules to make that claim. Rather, Space Coast says the express provisions in the Arbitration Agreement conflict with those AAA Consumer Rules. (Doc. 46, p. 3). In the event of a conflict with the rules, the Arbitration Agreement does provide that its express terms "shall supersede [any] conflicting Rules only to the extent of the inconsistency." (Doc. 8-1, § 37). Space Coast points to the all-caps language explaining credit union members will "give up" their right to go to court "as a result" of either party electing to "resolve a particular claim through arbitration." (Doc. 8-1, § 37; Doc. 46, p. 3). It insists the provision means that after filing an arbitration demand, "Plaintiffs cannot bring their claims in this (or any) Court" no matter what. (Doc. 46, p. 3). To the extent the rules suggest otherwise, Space Coast says, the Arbitration Agreement controls. (*Id.*).

Space Coast's attempt to invent a conflict is unconvincing. To begin with, Florida law requires courts to avoid finding conflicts by reading contract provisions

in a complementary fashion. *Kendall Imports, LLC v. Diaz*, 215 So. 3d 95, 102 (Fla. 3d DCA 2017) (citing *H.C. Lawton, Jr., Inc. v. Truck Drivers, Chauffeurs & Helpers Local Union No. 384*, 755 F.2d 324, 329 (3d Cir. 1985)). As the Third Circuit recently held, general terms providing arbitration as the exclusive method of dispute resolution do not conflict with the AAA Consumer Rules because the parties agreed to resolve disputes in arbitration "in accordance with" those rules. *Hernandez v. MicroBilt Corp.*, No. 22-3135, 2023 WL 8401682, at *4 (3d Cir. Dec. 5, 2023). Rather than a substantive provision, the language Space Coast cites is well-known in the ADR trade as standard boilerplate offering the consumer "some form of conspicuous notice of the agreement to arbitrate and its basic consequences," which is why it is in all-caps. *See, e.g.*, Principle 11 Reporter's Comments, AAA Consumer Due Process Protocol Statement of Principles, at 26-27 (Sept. 2014), https://www.adr.org/sites/default/files/document_repository/Consumer%20Due%20Process%20Protocol%20(1).pdf.   Though the general notice provision explains that a consumer initially gives up their right to go to court by electing arbitration, it does not preclude the consumer from getting the right back if the opposing party's indolence stands in the way of arbitration occurring. *See Miller*, 545 F.2d at 1020 ("Had defendant been at fault [], vacating the stay [under 9 U.S.C. § 3] could well be appropriate, since defendant originally sought the stay."). As many courts have held, general promises to exclusively arbitrate disputes will not prevent a party from bringing their dispute in court when the opposing party fails to comply with the forum's policies, or specifies a nonexistent

arbitral forum as integral to the agreement, or refuses to pay the arbitration fees, or takes actions waiving its right to arbitrate. *See, e.g.*, *MicroBilt*, 2023 WL 8401682, at *4 (collecting cases); *Parm v. Nat'l Bank of California, N.A.*, 835 F.3d 1331, 1338 (11th Cir. 2016) (nonexistent forum); *Bedgood*, 595 F. Supp. 3d at 1201–05 (failure to comply with AAA Rule 12); *Mason v. Coastal Credit, LLC*, No. 3:18-CV-835-J-39-MCR, 2018 WL 6620684, at *8 (M.D. Fla. Nov. 16, 2018) (failure to pay fee); *Figueredo-Chavez v. RCI Hosp. Holdings, Inc.*, 574 F. Supp. 3d 1167, 1172 (S.D. Fla. 2021) (same); *Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *7 (M.D. Fla. July 1, 2022) (discussing waiver). Nothing about a general notice provision speaks to the consequences for behavior obstructing the arbitral process—particularly since the Arbitration Agreement incorporates specific rules addressing that exact issue. *Cf. Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008) (holding a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject). The Court declines to imbue it with any suggestion otherwise.

Space Coast is also under the impression its noncompliance only made the AAA "unavailable" as a forum, rather than constituted a default. (Doc. 24, p. 15; Doc. 46, p. 3). If the AAA is "unavailable" to resolve the claims, "and if [Plaintiffs] and [Space Coast] do not agree on a substitute forum, then [Plaintiffs] can select the forum for the resolution of the claims," according to the Arbitration Agreement. (Doc. 8-1, § 37(a)). Space Coast contends the provision allows

Plaintiffs to choose a substitute *arbitral* forum only. (Doc. 24, p. 15; Doc. 46, p. 3). On the other hand, Plaintiffs assert the unavailability provision allows them to choose *any* substitute forum, including a court. (Doc. 37, pp. 12–13).

In reality, the AAA was available to arbitrate disputes. As Plaintiffs note, this Court previously held that an arbitral forum is unavailable "when it no longer exists or does not even handle private arbitrations," not "for merely refusing to arbitrate an agreement," as the AAA did here. *Bedgood*, 595 F. Supp. 3d at 1202 n.12. But even assuming the AAA were unavailable, Space Coast's contract interpretation would not prevail. Under Florida law, a contract provision is ambiguous where it is susceptible to more than one rational interpretation and any ambiguity must be construed against the drafter. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). As demonstrated by the parties' arguments, the unavailability provision is susceptible to two different rational interpretations—with the general promise to arbitrate supporting Space Coast's view, and the "essential term" that the AAA administer it supporting Plaintiffs' view—and Space Coast drafted it, so Plaintiffs' reading would win out.

Last, Plaintiffs argue that Space Coast waived its right to arbitrate. Waiver "is the intentional relinquishment or abandonment of a known right" determined by "the actions of the person who held the right." *Sundance*, 596 U.S. at 417 (internal quotations omitted). Parties may effect waiver by engaging in "conduct which implies the voluntary and intentional relinquishment of a known right." *Raymond James*, 896 So. 2d at 711. The test is whether, under the totality of

circumstances, the party acted inconsistently with its arbitration right. *Id.* Since actively participating in litigation is inconsistent with an arbitration right, it stands to reason that failing to perform obligations necessary to participate in arbitration is also inconsistent with that right. *See Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 933 (11th Cir. 2019) (holding a party acted inconsistently with its contractual right to arbitrate when it refused to pay a fee expressly required by the arbitration agreement).[3] In this case, Space Coast failed to take the steps necessary for arbitration to be had by failing to submit the Arbitration Agreement for pre-dispute review and pay the associated fee. (Doc. 8-3).[4] Then, the credit union waited to begin taking those steps until *two days after* Plaintiffs filed this action—which was more than a month since the AAA declined to administer arbitration. (Doc. 26, ¶ 6). Having written the terms of the Arbitration Agreement, Space Coast cannot credibly claim it was unfamiliar with the AAA's requirements. Such a lackadaisical regard for pursuing arbitration on its part—which Space Coast voluntarily and intentionally engaged in—is inconsistent with the greater speed

---

[3]  "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[4]  Nothing about the AAA's declination was "improper[]" as Space Coast baldly claims. (Doc. 24, p. 2; Doc. 46, p. 5). As drafter of the Arbitration Agreement, Space Coast should be very familiar with a decade-old AAA rule that it incorporated into the contract regarding preconditions for administering arbitration. It admits it did not abide by the rule, and the AAA could not be clearer that it will not administer arbitrations for those businesses that do not abide by the rule policies and pay their annual fees. AAA Consumer Rule 12, *supra* at 17. Recklessly false assertions of impropriety risk running afoul of Federal Rule of Civil Procedure 11 and the Court strongly advises Space Coast to exercise greater caution in future proceedings.

and efficiency that arbitration provides, and so is inconsistent with the credit union's arbitration right. *Cf. Stolt–Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 685 (2010) (noting "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (noting Congress had the expeditious resolution of claims in mind when drafting the FAA). Accordingly, Space Coast waived its contractual right to arbitration. That the credit union later became compliant does not revive it. *Thomas N. Carlton Estate v. Keller*, 52 So. 2d 131, 133 (Fla. 1951) ("When a party waives a right under a contract he cannot, without the consent of his adversary, reclaim it.").

As a final note, a defendant cannot rest on its laurels without consequences where arbitration is concerned. Space Coast advances an interpretation of the Arbitration Agreement that would place in its hands substantial control over when, if ever, Plaintiffs could seek to vindicate their rights. Any agreement eliminating judicial resolution as a backstop for an unserious or misbehaving defendant would be suspect—which is why Space Coast's interpretation strains credibility. For all of the above reasons, Space Coast's Motion to Compel Arbitration (Doc. 24) is denied.

### B. Motion to Dismiss

Space Coast's primary contention is that its overdraft policy quoted above, along with other provisions in the MSA and other disclosures made to Plaintiffs,

can be interpreted to allow the credit union to charge overdraft fees on APSN and fee-on-fee transactions. (Doc. 23). At the dismissal stage, the Court's review is limited to whether the contract, on its face, forecloses Plaintiffs' claims for breach. *See Precision Roofing of N. Florida Inc. v. CenterState Bank*, 3:20-CV-352-J-39-JRK, 2021 WL 3036354, at *2 (M.D. Fla. Feb. 22, 2021). If the contract is ambiguous, or resolution of the issue relies on extrinsic facts and documents, then courts cannot grant dismissal by interpreting the contract. *See BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017). This is because the Court may need to rely on extrinsic evidence when determining the true meaning of the parties' agreement, which it cannot do on a motion to dismiss. *See Adams v. Thiokol Corp.*, 231 F.3d 837, 844 (11th Cir. 2000).

In this case, Plaintiffs lay out a reasonable interpretation of the MSA that would preclude Space Coast from assessing overdraft charges on APSN and fee-on-fee transactions. (Doc. 8, ¶¶ 29–56, 77–85). The MSA can be read to only allow overdraft fees when Plaintiffs initiate and "consent" to Space Coast authorizing a withdrawal request that overdraws the account. (Doc. 8-1, § 13(a)). Be that as it may, Space Coast also presents a rational, contrary interpretation of the MSA, which allows an overdraft fee to be imposed when the credit union "pays"—i.e., settles—a withdrawal request. (Doc. 23, pp. 13–21). The language regarding the order-of-payment policy arguably supports this position. (Doc. 8-1, § 13(c)).

Finding the MSA ambiguous, the Court cannot dismiss the Amended Complaint for failure to state a claim. Resolving the motion as Space Coast requests

would require an impermissible review of extrinsic documents to determine the parties' intent. (Doc. 23, p. 19 n.6; Doc. 25-3). Such matters are better suited for summary judgment. *See BioHealth Medical*, 706 F. App'x at 524. Accordingly, Space Coast's motion to dismiss is denied.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Space Coast's Motion to Compel Arbitration (Doc. 24) is **DENIED**.

2. Space Coast's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 23) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on December 15, 2023.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

20